**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETEZZA CORPORATION, JAMES BAUM, JITENDRA S. SAXENA, PAUL J. FERRI, EDWARD J. ZANDER, PETER GYENES, CHARLES F. KANE, FRANCIS A. DRAMIS, JR., ROBERT J. DUNST, JR., AND J. CHRIS SCALET.<br><br>Defendants. | DOCKET NO.<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

**CLASS ACTION COMPLAINT**

Plaintiff, Oklahoma Law Enforcement Retirement System ("OLERS"), by and through its attorneys, makes the following allegations upon personal knowledge specifically pertaining to Plaintiff and Plaintiff's actions, and upon information and belief based upon the investigation of counsel which included, *inter alia*, a review of public filings made with the Securities and Exchange Commission ("SEC") and press releases and reports, as to all other allegations herein, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this action on behalf of itself and as a class action on behalf of the shareholders of Netezza Corporation ("Netezza" or the "Company"), other than Defendants and their affiliates (the "Class"), for injunctive and other appropriate relief resulting from the

breaches of fiduciary duties owed by Netezza and James Baum, Jitendra S. Saxena, Paul J. Ferri, Edward J. Zander, Peter Gyenes, Charles F. Kane, Francis A. Dramis, Jr., Robert J. Dunst, Jr., and J. Chris Scalet (the "Director Defendants") to Plaintiff and members of the Class regarding a proposed transaction by International Business Machines Corporation ("IBM") to acquire the Company (the "Proposed Transaction").

2. Defendants are obligated to act in the best interests of Netezza's shareholders and, once it becomes clear that an effective change of corporate control will occur, must take all necessary steps to ensure that Netezza shareholders receive the maximum realizable value for their shares of the Company.

3. Rather than fulfill their fiduciary obligations, Defendants have instead agreed to sell the Company for grossly inadequate consideration via an unfair sale process. Compounding these failures is the fact that Defendants also agreed to preclusive and onerous deal protection devices that unfairly favor IBM and which discourages potential bidders from throwing their hat in the ring. In addition, certain Defendants have secured lucrative retention or transition agreements, further wedding themselves to the Proposed Transaction at the expense of Netezza's stockholders.

4. As a result of these breaches of duty, Defendant Netezza has agreed to be acquired by IBM for a purchase price of $27.00 per share – a price that offers an inadequate premium of only 9.8% to Netezza shareholders. The Director Defendants, in addition to accepting inadequate consideration for the sale of the Company, also agreed to numerous "deal protection" provisions in its agreement with IBM, including a "no-shop," or non-solicitation, provision that prohibits the Company from seeking superior bids. This provision is particularly onerous where there is no indication that Defendants adequately shopped the Company or

performed any market check before entering into the Proposed Transaction with IBM. The agreement further calls for an unlimited recurring matching rights provision and a $56 million termination fee. In breach of their fiduciary duties, Defendants have agreed to sell the Company at an unfair price under an unfair process, the terms of which unfairly favor IBM over any other potential bidder.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from approving the Proposed Transaction. In the event that the Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from the Director Defendants' breaches of fiduciary duties.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(a)(1) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

7. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because: (i) Netezza maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial

portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **PARTIES**

9. Plaintiff OLERS is, and at all relevant times, has been a shareholder of Netezza common stock. OLERS brings this action as a class action on behalf of itself and all other similarly situated Netezza shareholders, for declaratory and injunctive relief or, alternatively, for monetary damages.

10. Defendant Netezza is a Delaware corporation that maintains its corporate headquarters in Marlborough, Middlesex County, Massachusetts.

11. Defendant Jitendra S. Saxena ("Saxena") is a founder of Netezza, has been Chairman of the Company's Board of Directors since June 2007 and has been a director since the Company's inception in 2000.

12. Defendant James Baum ("Baum") has served as President of Netezza since June 2006, as Chief Executive Officer since February 2009 and as a Director of the Company since August 2006.

13. Defendant Paul J. Ferri ("Ferri") has served as Director of the Company since November 2005.

14. Defendant Edward J. Zander ("Zander") has served as a Director of the Company since April 2002.

15. Defendant Peter Gyenes ("Gyenes") has served as a Director of the Company since November 2007.

16. Defendant Charles F. Kane ("Kane") has served as a Director of the Company since May 2005.

17. Defendant Francis A. Dramis, Jr. ("Dramis") has served as a Director of the Company since May 2008.

18. Defendant Robert J. Dunst, Jr. ("Dunst") has served as a Director of the Company since 2007.

19. Defendant J. Chris Scalet ("Scalet") has served as a Director of the Company since June 2009.

20. Each of the Director Defendants was a member of the Netezza Board of Directors at all pertinent times and participated in the decisions and conduct alleged of herein. By reason of their positions, the Director Defendants owe fiduciary duties to the Company and its shareholders. These duties include the obligations of loyalty, good faith, fair dealing, and due care. Pursuant to such duties, each Director Defendant has had and continues to have an obligation to determine whether the Proposed Transaction is in the best interests of the Company and its shareholders. Each Director Defendant participated in the decisions and conduct of the Board alleged herein.

21. Interested party IBM is a New York corporation with corporate headquarters in Armonk, New York.

**FACTUAL BACKGROUND**

22. Netezza is a global leader in data warehouse, analytic and monitoring appliances that dramatically simplify high-performance analytics across an extended enterprise. Netezza's technology enables organizations to process enormous amounts of captured data at exceptional speed, providing a significant competitive and operational advantage in today's data-intensive

industries, including digital media, energy, financial services, government, health and life sciences, retail and telecommunications. Netezza trades on the New York Stock Exchange ("NYSE") under the ticker symbol "NZ."

23. IBM is a multinational computer, technology and IT consulting corporation headquartered in Armonk, New York. IBM is the world's fourth largest technology company with a history that dates back to the 19th century. IBM manufactures and sells computer hardware and software, and offers infrastructure services, hosting services, and consulting services in areas ranging from mainframe computers to nanotechnology.

*The Proposed Acquisition of Netezza by IBM*

24. On September 20, 2010, IBM and Netezza issued a joint press release announcing that IBM would acquire Netezza in a cash transaction at a price of $27 per share or at a net price of approximately $1.7 billion, after adjusting for cash. Under the terms of the Agreement and Plan of Merger, dated September 19, 2010, by and among IBM, Onyx Acquisition Corp. (a wholly owned subsidiary of IBM created solely for purposes of the Proposed Transaction), and Netezza (the "Merger Agreement"), each share of common stock owned in the Company shall be converted into the right to receive $27.00 in cash, without interest.

25. The Proposed Transaction offers inadequate consideration to Netezza shareholders. The proposed merger consideration of $27 per share represents a paltry premium of about 9.8% based on the closing price of the Company's stock the day prior to the announcement of the Proposed Transaction. On December 21, 2009, a Bloomberg article entitled "CEOs paying 56% M&A Premium Shows Stocks May be Cheap" reported that "[t]he average premium in mergers and acquisitions in [2009] which U.S. companies were the buyer and seller rose to 56% this year from 47 percent last year…." A premium of only 9.8% is

grossly inadequate and well below the average premium typically paid in like transactions. The consideration being offered is inadequate and divests Netezza shareholders from being able to benefit from any future potential in their investment.

26. Moreover, IBM is acquiring Netezza at a time when the Company is poised for growth at a huge discount to its intrinsic value. For instance, Netezza had outstanding growth in the first quarter of fiscal year 2011. Jim Baum, Netezza's President and CEO, announced on May 25, 2010 that "[o]ur first quarter was an outstanding quarter for Netezza. Our revenue growth in the quarter demonstrates the widespread adoption of our TwinFin™ family of appliances. This, together with our recently introduced Skimmer™ and i-Class™ products, will continue to broaden our market reach and opportunity." "Our first quarter was a great quarter and more importantly a positive indicator for our business as a whole," said Patrick Scannell, Netezza's Senior Vice President and Chief Financial Officer on May 25, 2010. "We saw our pipeline expand across the board with our visibility remaining strong. As a result, we are increasingly confident with our previously issued 20% annual revenue growth guidance and we expect year over year operating margin improvement."

27. Netezza also saw explosive growth in the second quarter of fiscal year 2011, which ended July 31, 2010. The Company posted 45 percent growth for the quarter, brought in $3.2 million in net income, more than four times what it brought in for the second quarter 2010. *See* 8/26/2010 Press Release ("NETEZZA ANNOUNCES SECOND QUARTER FISCAL YEAR 2011 FINANCIAL RESULTS"). The Company's product revenues were up 57.7 percent to $47.3 million, while services sales revenues were up 18.4 percent to $16.5 million. *Id.* Netezza closed 28 new customers in this Q2 2011 and added 22 employees. *See* 8/26/10 Q2 2011 Earnings Conference Call (Opening Statement of Jim Baum, President and CEO).

28. In addition, the Company's stock price has shown significant growth since the beginning of the year, nearly tripling from $8.59 per share on February 4, 2010 to its pre-announcement closing price of $24.60 per share on September 17, 2010.  There is nothing to indicate that this upward trend in stock movement would not continue into the future and, as such, defendants are unfairly depriving Plaintiff and other members of the Class of the true value of their investment in Netezza by agreeing to sell the Company for inadequate consideration.

29. Analysts have also indicated that the Company is worth more than the $27.00 per share merger consideration.  For instance, on September 19, 2010, TheStreet issued a Buy rating on Netezza, listing the target price for the Company at $32.12 per share.  This report noted that "[Netezza's] strengths can be seen in multiple areas, such as its robust revenue growth, largely solid financial position with reasonable debt levels by most measures, increases in net income, good cash flow from operations and solid stock price performance."  TheStreet's report further noted that Netezza's revenue growth "has slightly outpaced the industry average" and has also "vastly surpassed the industry average cash flow growth rate…"

30. The market also appears to agree.  Following the September 20 announcement of the Proposed Transaction, Netezza shares quickly rose above the $27 offer price, trading as high as $28.59 per share on September 20, 2010.

31. The Merger Agreement was also entered into as the result of an unfair sale process.  For instance, there is no indication that an adequate pre-market auction check was conducted before Defendants entered into the Proposed Transaction.  Compounding this inadequate market check is the fact that the Director Defendants also agreed to onerous and preclusive deal protection provisions that unfairly favor IBM over any other potential suitor.

32. For instance, the Merger Agreement contains a "no-shop" provision that prohibits Netezza from soliciting competing bids for the Company despite the Company's failure to conduct any pre-signing market check. Thus, the Director Defendants have contracted away their fiduciary duty to maximize shareholder value by limiting their ability to solicit alternative proposals.

33. The Merger Agreement also contains an unlimited recurring matching rights provision, eliminating any leverage the Company has in receiving an unsolicited offer. The Merger Agreement gives IBM access to any rival bidder's information and requires daily updates from Netezza concerning the progress of negotiations with any rival bidder and the material resolved and unresolved issues relating thereto as well as copies of all material documents and material written or electronic communications relating to any takeover proposals. Accordingly, any potential rival will be discouraged from submitting a superior bid because the Merger Agreement assures that any "auction" will favor IBM and piggy-back upon the due diligence of the second bidder.

34. The Merger Agreement also imposes a break-up fee of $56 million if the Company accepts a superior proposal from another bidder. This termination fee, coupled with the Director Defendants' failure to ensure that the Company was adequately shopped either before or after the signing of the Merger Agreement, effectively discourages another bidder from submitting a superior offer for the Company.

35. Moreover, certain executives, including Defendant Baum, have already entered into retention or transition agreements with IBM, effectively ensuring that they will favor the Merger Agreement over any other bid to ensure their continued employment. According to a Form 8-K filed with the Securities and Exchange Commission ("SEC") on September 20, 2010,

certain Netezza executives have entered into employment and/or transition arrangements with IBM in connection with the execution of the Merger Agreement that, among other things, includes a retention or transition bonus program. "These programs provide for either a transition bonus within twelve months after the closing of the Merger or participation in a retention bonus program for up to three years after the closing of the Merger, payable for achievement of certain milestones after the closing." *See* Form 8-K filed with the SEC on Sept. 20, 2010 at p. 5.

36. Taken together, these various provisions render it unreasonable to expect that the Director Defendants will fulfill, or are even capable of fulfilling, their fiduciary obligations to Netezza shareholders. The provisions contained in the Merger Agreement unreasonably limit the Director Defendants' ability to freely pursue alternative transactions, are unfair, and should be rejected as an unlawful abandonment of the Director Defendants' fiduciary obligations.

## IRREPARABLE HARM

37. Plaintiff has no adequate remedy at law. Only through the exercise of the Court's equitable powers will Netezza's shareholders be protected from the irreparable injury that would arise from losing the opportunity to maximize the value of their investments in the securities of Netezza. Absent equitable relief from the Court, Netezza's shareholders may be deprived of the ability to sell their shares at a substantial premium to their trading price to another potential suitor of Netezza.

## CLASS ACTION ALLEGATIONS

38. Plaintiff, a shareholder of the Company, brings this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of itself and all common stockholders of Netezza (except Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants) who are or will be

deprived of the opportunity to maximize the value of their shares of Netezza stock as a result of the breaches of fiduciary duty and other misconduct complained of herein.

39. This action is properly maintainable as a class action.

40. A class action is superior to other available methods of fair and efficient adjudication of this controversy.

41. The Class is so numerous that the joinder of all members is impracticable. As of August 31, 2010, Netezza had about 62.76 million shares of common stock outstanding. Consequently, the number of Class members is believed to be in the thousands and are likely scattered across the United States. Moreover, damages suffered by individual Class members may be small, making it overly expensive and burdensome for individual Class members to pursue redress on their own.

42. There are questions of law and fact which are common to all Class members and which predominate over any questions affecting only individuals, including:

    a. whether the Director Defendants have fulfilled, and are capable of fulfilling, their fiduciary duties to Plaintiff and the Class;

    b. whether the Director Defendants have breached and continue to breach their fiduciary duties to obtain the best price practicable under the circumstances for the benefit of the Netezza shareholders; and

    c. whether the Class is entitled to injunctive relief and/or damages.

43. Plaintiff's claims and defenses are typical of the claims and defenses of the other Class members and Plaintiffs have no interests that are antagonistic or adverse to the interests of other Class members. Plaintiff will fairly and adequately protect the interests of the Class.

44. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

45. Defendants have acted in a manner that affects Plaintiffs and all members of the Class alike, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

46. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

## CAUSE OF ACTION
## COUNT I

**(Breach of Fiduciary Duties Against the Director Defendants)**

47. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

48. The Director Defendants owe Plaintiff and the Class the utmost fiduciary duties of due care, good faith, fair dealing and loyalty.

49. By reason of the foregoing, the Director Defendants have breached their fiduciary duties and continue to breach their fiduciary duties by, *inter alia*, entering into a merger agreement with IBM without regard to the fairness of the transaction or the consideration being offered to Netezza shareholders. In particular, the Director Defendants have violated their fiduciary duties by: (1) failing to take steps to maximize the value of Netezza stock; (2) avoiding any competitive bidding that may have created greater value for Netezza shareholders; and (3)

agreeing to unreasonably preclusive deal protection provisions, thereby hindering any potential bid that may have been superior to IBM's bid. The Director Defendants further breached their fiduciary duty by giving IBM an unfair advantage by, among other things, failing to adequately solicit other potential acquirers or alternative transactions.

50. The Director Defendants have at all times been fiduciaries of Netezza shareholders and owed and continue to owe fiduciary duties to the Company and its shareholders. The Director Defendants have breached and continue to breach their fiduciary duties to the Company's shareholders, as described herein.

51. As a result of the foregoing, Plaintiff and the Class have been harmed and have no adequate remedy at law.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor and in favor of the Class and against the Defendants as follows:

A. Certifying this case as a Class Action, certifying the proposed Class and designating Plaintiff and the undersigned counsel as representatives of the Class;

B. Enjoining the Director Defendants and any and all other employees, agents, or representatives of the Company and persons acting in concert with any one or more of any of the foregoing, during the pendency of this action, from taking any action to consummate the Proposed Transaction until such time as the Director Defendants have fully complied with their duties to maximize shareholder value;

C. Preliminarily and permanently enjoining the Director Defendants from entering into any contractual agreements or acquisitions which would inhibit the Director

Defendants' ability to maximize shareholder value;

      D.    Awarding Plaintiff and the Class appropriate compensatory damages, together with pre- and post-judgment interest;

      E.    Finding the Director Defendants liable for breaching their fiduciary duties to the Class;

      F.    Awarding Plaintiff the costs, expenses and disbursements of this action, including any attorneys' and experts' fees and, if applicable, pre-judgment and post-judgment interest; and

      G.    Awarding Plaintiff and the Class such other relief as this Court deems just, equitable and proper.

Dated: September 27, 2010            Respectfully submitted,

                          /s/ Jeffrey C. Block
                          **BERMAN DEVALERIO**
                          Jeffrey C. Block (BBO #600747)
                          Leslie R. Stern (BBO #631201)
                          Patrick T. Egan (BBO #637477)
                          Abigail R. Romeo (BBO #657680)
                          Daryl DeValerio Andrews (BBO #658523)
                          One Liberty Square
                          Boston, MA 02109
                          Telephone: (617) 542-8300
                          Facsimile: (617) 542-1194
                          E-mails:  jblock@bermandevalerio.com
                                        lstern@bermandevalerio.com
                                        pegan@bermandevalerio.com
                                        aromeo@bermandevalerio.com
                                        ddevalerio@bermandevalerio.com

                          *Counsel for Plaintiff Oklahoma Law Enforcement Retirement System*